O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>                    Plaintiff,<br>          v.<br><br>7-ELEVEN, INC.; GETTY LEASING, INC.;<br>CALIFORNIA LEASING, INC.; U.S.R.P.<br>HOLDING CORP., INC.; BALWINDER SINGH;<br>and PRITPAL KAUR BAINS,<br><br>                    Defendants. | Case No. 2:12-cv-01487-ODW(Ex)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE MOTION TO MODIFY THE COURT'S SCHEDULING ORDER [24]** |

Plaintiff Byron Chapman moves the Court ex parte to continue the trial and associated pretrial dates in this Americans with Disabilities Act action by 90 days, as he recently discovered that his prior counsel had not diligently prosecuted his case. For the reasons that follow, the Court **DENIES** Chapman's request.

On February 22, 2012, Chapman filed this action against 7-Eleven and various related individuals and entities for violation of the ADA, California's Health and Safety Code section 19955, and California's Unruh Civil Rights Act.   Chapman contends that "he encountered a number of access-related barriers"—including barriers in the parking lot, restrooms, travel paths, and gas station—during at least three visits to the 7-Eleven store on 903 W. Ventura Street in October 2010.  (Compl. ¶ 13.)

1  On June 26, 2012, the Court issued a Scheduling and Case Management Order

2  governing this case.  (ECF No. 21.)  The Court set trial for February 12, 2013, and the

3  discovery cutoff date for November 12, 2012.  Given the November 12 discovery cut-

4  off date, expert designations were to be made no later than September 17, 2012,

5  and written discovery was to be served no later than October 10, 2012.  The Court

6  also specifically noted that the case-management "dates and requirements are firm.

7  The Court is unlikely to grant continuances, even if stipulated by the parties, unless

8  the parties establish good cause through a concrete showing."

9  On October 1, 2012—after the expiration of the expert-disclosure deadline—

10  Chapman requested the Court's permission to substitute Patricia Barbosa in place of

11  his original counsel, Jeff Harrison.  The Court granted this request on October 2.  This

12  substitution was apparently the result of a contentious disbanding of Barbosa and

13  Harrison's former partnership, Barbosa, Metz & Harrison.  (Barbosa Decl. ¶ 4.)

14  Barbosa describes the workup of this case to date in a declaration submitted in

15  support of her Application:

16  Mr. Chapman's case had been handled solely by Jeff Harrison, who filed

17  the complaint, and had sole custody of the case.  I did not do any work

18  and was not informed of the progress of this case, and had no

19  communication with defense counsel for Defendants or the Plaintiff . . . .

20  In late September Mr. Chapman found out that the partnership had

21  broken up and asked that I take over his case, as he had not had any

22  communication from Mr. Harrison for months and did not believe that

23  his case was being taken care of.

24  (*Id.*)

25  Following her substitution into this case, Barbosa (and Chapman) discovered

26  for the first time that Harrison "had not yet served any written discovery, taken any

27  depositions, designated experts or exchanged expert reports."  (*Id.*)  Barbosa now

28  contends that maintaining the original case-management dates in the face of

1  Harrison's lack of diligence during discovery "will result in a manifest injustice, as
2  complete discovery, including an expert site inspection[] and expert designation[,] is
3  essential to Plaintiff's ability to prove his case, and necessary for the Parties to
4  engage in meaningful settlement negotiations prior to their preparation for pretrial
5  conference obligations."  (Appl. 2.)

6          Defendants characterize Barbosa's request as nothing more than a
7  disagreement over Harrison's trial strategy.  (Opp'n 4 ("Ms. Barbosa merely assumes
8  that Mr. Harrison was not diligent because Ms Barbosa was 'shocked' that his
9  discovery strategy differed from what she would have done.").)  Defense counsel
10 Ryan McNamara notes that throughout this litigation, he has "personally had
11 numerous discussions with Mr. Harrison regarding the potential resolution of this
12 matter and [has] additionally[] met with Mr. Harrison in person to discuss potential
13 closure of this dispute."  (McNamara Decl. ¶ 9.)  Defendants further aver that
14 "[b]efore Ms. Barbosa substituted in for Mr. Harrison, Defendants' counsel had many
15 amicable, professional, and productive discussions and negotiations with Mr.
16 Harrison in handling this case and the disclosure of information in this case."  (Opp'n
17 2.)

18         A Rule 16(b) scheduling order "is not a frivolous piece of paper, idly entered,
19 which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth*
20 *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Accordingly, the Court must
21 withhold consent to modification of a scheduling order where the parties fail to
22 establish good cause for the modification.  Fed. R. Civ. P. 16(b)(4).

23         "Rule 16(b)'s 'good-cause' standard primarily considers the diligence of the
24 party seeking the amendment." *Johnson*, 975 F.2d at 609.  The determinative
25 question is whether the scheduling order could not have been reasonably met
26 "despite the diligence of the party seeking the extension." *Id*. (quoting Fed. R. Civ. P.
27 16 advisory committee's notes (1983)).  Although prejudice to the opposing party
28 "might supply additional reasons to deny a motion, the focus of the inquiry is upon

1  the moving party's reasons for seeking modification.  If that party was not diligent,
2  the inquiry should end."  *Id.*; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th
3  Cir. 2002) (emphasis added) (affirming denial of motion to modify schedule where
4  plaintiff failed to "demonstrate diligence in complying with the dates set by the
5  district court").

6       The Court finds good cause lacking here.  While Barbosa herself may have
7  diligently sought a continuance of the pretrial dates *upon her substitution into this*
8  *action*, there is no evidence that Chapman himself was diligent in prosecuting this
9  action.[1]  Implicit in Chapman's request to modify the Court's scheduling order is the
10 notion that Chapman should not be made to suffer for Harrison's dilatory discovery
11 efforts.  But litigants are deemed bound by the acts of their lawyer-agents and are
12 "considered to have notice of all facts, notice of which can be charged upon the
13 attorney."  *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672–
14 73 (C.D. Cal. 2003) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)).  And
15 litigants are also charged with knowledge of their case file—"including the case
16 management dates set by the court."  *Id.*  While Barbosa notes that Chapman had
17 not received any communication from Harrison "for months" preceding her
18 substitution as counsel, communication is a two-way street.  Obviously by at least
19 September Chapman was aware that he could contact other members of Harrison's
20 firm if he was unable to contact Harrison, as he successfully contacted Barbosa to
21 replace Harrison as his attorney.  Indeed, Chapman should be acutely aware of his
22 duty to diligently prosecute his action, given that he has filed at least 108 actions
23 (many of which allege similar ADA violations) in federal district courts in California
24 since 2000.  (McNamara Decl. ¶ 12 & Ex. B.)
25 ///
26 ///

_____

[1] The Court also notes that as Harrison's law partner during Harrison's representation in this action, Barbosa may be held vicariously liable for any lack of diligence on Harrison's part.  *See PCO, Inc. v. Christensen, Miller, Fink, Jacons, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 391 (2007).

1    Given Chapman's failure to communicate with his attorney for "months" in a

2  case that has only been pending in this Court since February or otherwise attempt to

3  comply with the discovery deadlines in this action, there is no question that

4  Chapman may be charged with Harrison's lack of diligence.  Because Chapman was

5  not diligent in complying with the Court's Scheduling and Case Management Order,

6  he cannot demonstrate good cause to modify that Order.  The Court therefore

7  **DENIES** Chapman's ex parte application.

8    **IT IS SO ORDERED.**

9

10    October 29, 2012

11

12    _____

13    **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28