O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>                Plaintiff,<br>    v.<br>7-ELEVEN, INC.; GETTY LEASING, INC.; CALIFORNIA LEASING, INC.; U.S.R.P. HOLDING CORP., INC.; BALWINDER SINGH; and PRITPAL KAUR BAINS,<br><br>                Defendants. | Case No. 2:12-cv-01487-ODW(Ex)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE MOTION TO MODIFY THE COURT'S SCHEDULING ORDER [24]** |

Plaintiff Byron Chapman moves the Court ex parte to continue the trial and associated pretrial dates in this Americans with Disabilities Act action by 90 days, as he recently discovered that his prior counsel had not diligently prosecuted his case. For the reasons that follow, the Court **DENIES** Chapman's request.

On February 22, 2012, Chapman filed this action against 7-Eleven and various related individuals and entities for violation of the ADA, California's Health and Safety Code section 19955, and California's Unruh Civil Rights Act.  Chapman contends that "he encountered a number of access-related barriers"—including barriers in the parking lot, restrooms, travel paths, and gas station—during at least three visits to the 7-Eleven store on 903 W. Ventura Street in October 2010.  (Compl. ¶ 13.)

On June 26, 2012, the Court issued a Scheduling and Case Management Order governing this case. (ECF No. 21.) The Court set trial for February 12, 2013, and the discovery cutoff date for November 12, 2012. Given the November 12 discovery cut-off date, expert designations were to be made no later than September 17, 2012, and written discovery was to be served no later than October 10, 2012. The Court also specifically noted that the case-management "dates and requirements are firm. The Court is unlikely to grant continuances, even if stipulated by the parties, unless the parties establish good cause through a concrete showing."

On October 1, 2012—after the expiration of the expert-disclosure deadline—Chapman requested the Court's permission to substitute Patricia Barbosa in place of his original counsel, Jeff Harrison. The Court granted this request on October 2. This substitution was apparently the result of a contentious disbanding of Barbosa and Harrison's former partnership, Barbosa, Metz & Harrison. (Barbosa Decl. ¶ 4.)

Barbosa describes the workup of this case to date in a declaration submitted in support of her Application:

> Mr. Chapman's case had been handled solely by Jeff Harrison, who filed the complaint, and had sole custody of the case. I did not do any work and was not informed of the progress of this case, and had no communication with defense counsel for Defendants or the Plaintiff . . . . In late September Mr. Chapman found out that the partnership had broken up and asked that I take over his case, as he had not had any communication from Mr. Harrison for months and did not believe that his case was being taken care of.

(*Id.*)

Following her substitution into this case, Barbosa (and Chapman) discovered for the first time that Harrison "had not yet served any written discovery, taken any depositions, designated experts or exchanged expert reports." (*Id.*) Barbosa now contends that maintaining the original case-management dates in the face of

Harrison's lack of diligence during discovery "will result in a manifest injustice, as complete discovery, including an expert site inspection[] and expert designation[,] is essential to Plaintiff's ability to prove his case, and necessary for the Parties to engage in meaningful settlement negotiations prior to their preparation for pretrial conference obligations." (Appl. 2.)

Defendants characterize Barbosa's request as nothing more than a disagreement over Harrison's trial strategy. (Opp'n 4 ("Ms. Barbosa merely assumes that Mr. Harrison was not diligent because Ms Barbosa was 'shocked' that his discovery strategy differed from what she would have done.").) Defense counsel Ryan McNamara notes that throughout this litigation, he has "personally had numerous discussions with Mr. Harrison regarding the potential resolution of this matter and [has] additionally[] met with Mr. Harrison in person to discuss potential closure of this dispute." (McNamara Decl. ¶ 9.) Defendants further aver that "[b]efore Ms. Barbosa substituted in for Mr. Harrison, Defendants' counsel had many amicable, professional, and productive discussions and negotiations with Mr. Harrison in handling this case and the disclosure of information in this case." (Opp'n 2.)

A Rule 16(b) scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Accordingly, the Court must withhold consent to modification of a scheduling order where the parties fail to establish good cause for the modification. Fed. R. Civ. P. 16(b)(4).

"Rule 16(b)'s 'good-cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. The determinative question is whether the scheduling order could not have been reasonably met "despite the diligence of the party seeking the extension." *Id*. (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983)). Although prejudice to the opposing party "might supply additional reasons to deny a motion, the focus of the inquiry is upon

the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." *Id.*; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (emphasis added) (affirming denial of motion to modify schedule where plaintiff failed to "demonstrate diligence in complying with the dates set by the district court").

The Court finds good cause lacking here.  While Barbosa herself may have diligently sought a continuance of the pretrial dates *upon her substitution into this action*, there is no evidence that Chapman himself was diligent in prosecuting this action.[1]  Implicit in Chapman's request to modify the Court's scheduling order is the notion that Chapman should not be made to suffer for Harrison's dilatory discovery efforts.  But litigants are deemed bound by the acts of their lawyer-agents and are "considered to have notice of all facts, notice of which can be charged upon the attorney." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672–73 (C.D. Cal. 2003) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)).  And litigants are also charged with knowledge of their case file—"including the case management dates set by the court." *Id.*  While Barbosa notes that Chapman had not received any communication from Harrison "for months" preceding her substitution as counsel, communication is a two-way street.  Obviously by at least September Chapman was aware that he could contact other members of Harrison's firm if he was unable to contact Harrison, as he successfully contacted Barbosa to replace Harrison as his attorney.  Indeed, Chapman should be acutely aware of his duty to diligently prosecute his action, given that he has filed at least 108 actions (many of which allege similar ADA violations) in federal district courts in California since 2000.  (McNamara Decl. ¶ 12 & Ex. B.)

///

///

---

[1] The Court also notes that as Harrison's law partner during Harrison's representation in this action, Barbosa may be held vicariously liable for any lack of diligence on Harrison's part.  *See PCO, Inc. v. Christensen, Miller, Fink, Jacons, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 391 (2007).

1 | Given Chapman's failure to communicate with his attorney for "months" in a case that has only been pending in this Court since February or otherwise attempt to comply with the discovery deadlines in this action, there is no question that Chapman may be charged with Harrison's lack of diligence. Because Chapman was not diligent in complying with the Court's Scheduling and Case Management Order, he cannot demonstrate good cause to modify that Order. The Court therefore **DENIES** Chapman's ex parte application.

**IT IS SO ORDERED.**

October 29, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**